**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| MSP RECOVERY CLAIMS, SERIES LLC, and MSPA CLAIMS 1, LLC, | Case No.: |
| Plaintiffs, | |
| v. | CLASS ACTION COMPLAINT |
| UNITED SERVICES AUTOMOBILE ASSOCIATION, USAA CASUALTY INSURANCE COMPANY, USAA GENERAL INDEMNITY COMPANY, GARRISON PROPERTY AND CASUALTY INSURANCE COMPANY, USAA COUNTY MUTUAL INSURANCE COMPANY, and USAA TEXAS LLOYD'S COMPANY, | DEMAND FOR JURY TRIAL |
| Defendants. | |

**PLAINTIFFS' CLASS ACTION COMPLAINT FOR DAMAGES**

Plaintiffs, MSP Recovery Claims Series, LLC ("MSPRC") and MSPA Claims 1, LLC ("MSPAC") (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated (the "Class Members"), bring this action against United Services Automobile Association, USAA Casualty Insurance Company, USAA General Indemnity Company, Garrison Property and Casualty Insurance Company, USAA County Mutual Insurance Company, and USAA Texas Lloyd's Company (collectively "Defendants"), and allege:

**INTRODUCTION**

1.      Defendants have systematically and uniformly failed to honor their primary payer obligations under 42 U.S.C. § 1395y, otherwise known as the Medicare Secondary Payer Act (the

1

"MSP Law"), by failing to pay for or reimburse medical expenses resulting from injuries sustained in automobile and other accidents (the "accident-related medical expenses") that should have been paid by Defendants but, instead, were paid by Medicare and/or Medicare Advantage Plans, which include Medicare Advantage Organizations, as well as first tier and downstream entities ("MA Plans"). Further, Defendants have also failed to reimburse Plaintiffs and the Class Members for accident-related medical expenses upon entering into settlements with Medicare beneficiaries. As a result, the cost of those accident-related medical expenses have been borne by Medicare and MA Plans to the detriment of the Medicare Trust Funds and the public.

2.      Defendants are auto or other liability insurers that provide either no-fault or med-pay insurance to their customers, including Medicare beneficiaries enrolled under Part C of the Medicare Act ("Enrollees"). Pursuant to their contractual obligations with their insureds, and under state law, Defendants are to provide coverage for their insureds' accident-related medical expenses on a "no-fault" basis (in other words, without regard for whether the insured was at fault for the accident). In the case of automobile and other accidents specifically involving Enrollees of MA Plans, Defendants are considered primary plans under the MSP Law. *See* 42 U.S.C. § 1395y(b)(2)(A) (defining "primary plan" to include a group health plan or large group health plan … a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no-fault insurance); 42 C.F.R. § 411.21 (same). Accordingly, Defendants' obligation to pay for accident-related medical expenses on behalf of Enrollees is primary relative to Medicare's obligation to pay for those same accident-related medical expenses, which is secondary. Defendants have systematically failed to make these payments and reimbursements, passing on those expenses to Medicare and MA Plans.

3.      Plaintiffs' assignors are MA Plans that provide Medicare benefits under the

Medicare Advantage Program, otherwise known as Part C of the Medicare Act. MA Plans provide such services pursuant to contracts with the Centers for Medicare & Medicaid Services ("CMS") in which CMS pays the MA Plans a fixed fee per enrollee and the MA Plans provide, at a minimum, the same benefits that Enrollees would receive under traditional Medicare. MA Plans stand in the same footing as traditional Medicare, including under the MSP Law, which declares that Medicare is a "secondary payer" to all other sources of coverage and, consequently, are empowered to recoup from rightful primary payers if they pay for services that fell within overlapping insurance maintained by Enrollees with a primary payer.

4.    The overriding purpose of the MSP Law is to ensure that Medicare and MA Plans do not pay for medical expenses on behalf of Medicare beneficiaries that should be paid instead by primary payers such as Defendants.[1] Without the provisions in the MSP Law establishing a private right of action against primary payers, there would exist no mechanism to ensure that primary payers hold up their end of the bargain and pay the medical expenses associated with accident-related injuries and/or treatments. Therefore, Medicare and MA Plans, which are otherwise required to conditionally pay accident-related medical expenses promptly with the expectation of reimbursement from a primary payer, would unjustly bear the burden and the overwhelming expense of such injuries and treatments.

5.    In addition to their obligation to pay for, and/or reimburse Medicare and MA Plans, accident-related medical expenses on behalf of their enrollees, primary payers like Defendants have an affirmative burden, under applicable federal regulations promulgated under the MSP Law, to: (i) identify whether their insureds are Medicare beneficiaries; and (ii) report their primary payer

---

[1] *See* Centers for Medicare and Medicaid Services, Coordination of Benefits and Recovery, Medicare Secondary Payer Overview (Jan. 13, 2014).

responsibility to CMS.

6.      Even in the face of the MSP Law's clear legal requirement that primary payers like Defendants pay for accident-related medical expenses, take steps to identify whether their enrollees are Medicare beneficiaries and report their primary payer responsibility to CMS,[2] they rarely honor their obligations and, instead, take steps to ensure that the burden for those accident-related medical expenses is borne by Medicare and MA Plans.

7.      In large part, Defendants' deliberate and systematic avoidance of payment and/or reimbursement obligations under the MSP Law has been successful in its primary objective—to pass on accident-related medical expenses to Medicare and MA Plans, including Plaintiffs' assignors and the Class Members.

8.      To remedy this problem, Congress provided a private right of action to any private entity or individual to enforce the MSP Law and remedy a primary payer's failure to reimburse conditional payments made by Medicare or MA Plans, and provided for the recovery of double damages for instances in which primary payers have failed to honor their payment and/or reimbursement obligations under the MSP Law.

9.      Plaintiffs utilize a proprietary system that matches the health care claims data from its assignors to the publicly available reporting data from CMS, Insurance Services Office ("ISO"), police crash and incident reports available in limited jurisdictions, and claims data made available by primary payers like Defendants, either voluntarily through a coordination of benefits process that primary payers ordinarily stonewall or by judicial compulsion in a data matching process that has proven successful in identifying primary payers' wrongdoing, to automate the process of identifying instances in which primary payers like Defendants fail to honor their obligations under

---

[2] *Id.*

the MSP Law.

10.     As described in detail below, Plaintiffs' assignors and the Class Members have each suffered an injury-in-fact as a result of Defendants' failure to meet their statutory payment and reimbursement obligations. This lawsuit seeks to remedy that wrong and advance the interests of the MSP Law and Medicare, because when MA Plans recover conditional payments they "spend less on providing coverage for their enrollees" and the "Medicare Trust Fund . . . achieve[s] cost savings." *In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 685 F.3d 353, 365 (3d Cir. 2012).

11.     This action seeks redress for Defendants' flagrant and systematic failure to comply with the MSP Law.

## PARTIES[3], JURISDICTION AND VENUE

12.     Plaintiff MSP Recovery Claims, Series LLC is a Delaware series limited liability company with a principal place of business located at 2701 S. Le Jeune Road, 10th Floor, Coral Gables, Florida 33134. MSPRC's limited liability company agreement provides for the establishment of one or more designated Series. All records of all Series are maintained together with all assets of MSPRC. All designated Series also have their principal place of business at 2701 S. Le Jeune Road, 10th Floor, Coral Gables, Florida 33134.

13.     MSPRC has established various designated Series pursuant to Delaware law in

---

[3] Plaintiffs have made a good faith effort to accurately identify the Defendants and have relied on information obtained from Defendants' website, police crash and incident reports, and reporting data from ISO and a vendor called MyAbility. MyAbility is one of sixteen (16) CMS-authorized vendors that allow companies, such as Plaintiff, to access data that primary payers report to CMS, in compliance with their statutory reporting obligations. The reporting data attached to this Complaint is taken directly from the data that CMS stores, which is inputted by Defendants, not Plaintiffs. Accordingly, any inaccuracies or lack of specificity in the reporting data is attributable to the manner in which Defendants chose to report.

order to maintain various claims recovery assignments separate from other company assets, and to account for and associate certain assets with certain particular series. All designated Series form a part of MSPRC and pursuant to MSPRC's limited liability agreement and applicable amendment(s), each designated Series is owned and controlled by MSPRC. MSPRC may receive assignments in the name of MSPRC, and further associate such assignments with a particular Series, or may have claims assigned directly to a particular Series. In either event, MSPRC maintains the right to sue on behalf of each Series and pursue any and all rights, benefits, and causes of action arising from assignments to a Series. Any claim or suit may be brought by MSPRC in its own name or it may elect to bring suit in the name of its designated Series.

14.     MSPRC's limited liability agreement provides that any rights and benefits arising from assignments to its Series shall belong to MSPRC.

15.     Plaintiff MSPA Claims 1, LLC is a Florida limited liability company, with its principal place of business at 2701 S. Le Jeune Road, Tenth Floor, Coral Gables, Florida 33134.

16.     Defendant United Services Automobile Association is a company that issues liability and no-fault policies, with its principal place of business at 9800 Fredericksburg Road, San Antonio, Texas 78288.

17.     Defendant USAA Casualty Insurance Company is a company that issues liability and no-fault policies, with its principal place of business at 9800 Fredericksburg Road, San Antonio, Texas 78288.

18.     Defendant USAA General Indemnity Company is a company that issues liability and no-fault policies, with its principal place of business at 9800 Fredericksburg Road, San Antonio, Texas 78288.

19.     Defendant Garrison Property and Casualty Insurance Company is a company that

issues liability and no-fault policies, with its principal place of business at 9800 Fredericksburg Road, San Antonio, Texas 78288.

20.     Defendant USAA County Mutual Insurance Company is a company that issues liability and no-fault policies, with its principal place of business at 9800 Fredericksburg Road, San Antonio, Texas 78288.

21.     Defendant USAA Texas Lloyd's Company is a company that issues liability and no-fault policies, with its principal place of business at 9800 Fredericksburg Road, San Antonio, Texas 78288.

22.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(d). At least one member of the class is a citizen of a different state than the Defendants and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interests and costs.

23.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 (federal question).

24.     This court has personal jurisdiction over Defendants as Defendants: (a) have contracted to insure a person, property, or risk located within this state at the time of contracting; and (b) operate, conduct, and carry on business ventures in the State of Florida. As set forth in greater detail below, the exemplar claims demonstrate that Defendants conduct business within this state. In addition, upon information and belief, one or more of the instances in which Plaintiffs' assignors paid for accident-related medical expenses that Defendants should have paid, but for which Defendants neither paid nor reported their primary payor responsibility, arose as a result of Defendants' conduct within this state.

25.     Further, Defendants maintain sufficient minimum contacts with the State of Florida so as to not offend traditional notions of fair play and substantial justice. Defendants maintain and

carry on systematic and continuous contacts in this judicial district, regularly transact business within this judicial district, and regularly avail themselves of the benefits in this judicial district. Defendants have purposefully availed themselves of the privilege of conducting activities within the State of Florida, thus invoking the benefits and protections of its laws. Defendants' purposeful availment was such that they should have reasonably anticipated being haled into court in this forum.

26.     At all times herein mentioned, Defendants were authorized to do or otherwise engage in business within the State of Florida and did in fact offer insurance policies that contain no-fault and/or medical payments ("Med Pay") coverage for any accident-related medical expense within the state of Florida and elsewhere.

27.     Venue is proper under 28 U.S.C. § 1391 in the United States District Court for the Southern District of Florida because it is the district in which the cause of action accrued.

## GENERAL ALLEGATIONS

28.     This is a class action lawsuit under the MSP Law, arising from Defendants' systematic and uniform failure to reimburse conditional payments made by Plaintiffs' assignors and the Class Members on behalf of Enrollees for accident-related medical expenses.

29.     Defendants' liability to reimburse such conditional payments ordinarily arises in one of two contexts: (i) where Defendants are obligated to pay for the Enrollees' accident-related medical expenses in the first instance under a "no-fault" coverage liability policy ("no-fault policy"); or (ii) where Defendants have entered into settlement agreements with Enrollees as a result of claims arising under liability insurance policies[4] issued by Defendants.

---

[4] Liability insurance plans are considered primary plans under 42 U.S.C. § 1395y(b)(2).

30.     On behalf of themselves and the Class Members, Plaintiffs seek, *inter alia*, double damages under the MSP Law's private cause of action for Defendants' failure to properly reimburse Plaintiffs' assignors' and the Class Members' conditional payments for Enrollees' accident-related medical expenses.

31.     Defendants have failed to fulfill statutory duties as "no-fault" insurers. Specifically, Defendants have systematically and uniformly failed to pay or reimburse conditional payments by Plaintiffs' assignors and Class Members on behalf of Enrollees for accident-related medical expenses. Enrollees are Medicare beneficiaries who were enrolled in an MA Plan offered or managed by Plaintiffs' assignors and Class Members, all of which are MA Plans. Plaintiffs' assignors and the Class Members suffered an injury-in-fact from Defendants' failure to reimburse, and accordingly have standing to sue under 42 U.S.C. §1395y(b)(3)(A).

32.     Plaintiffs' assignors and the putative Class Members provided Medicare benefits to the Enrollees. In numerous instances, Enrollees suffered injuries in connection with an accident, and Plaintiffs' assignors and the putative Class Members paid for accident-related medical expenses.[5] Because Enrollees were also covered by no-fault policies issued by Defendants, Defendants are primary payers under the MSP Law and either should have paid the accident-related medical expenses directly or should have reimbursed Plaintiffs' assignors and the putative Class Members for the conditional payments they made.

33.     Defendants have also failed to fulfill their statutory duties upon entering into

---

[5] MA Plans are required to promptly pay "clean claims" for medical expenses presented by healthcare providers so that Medicare beneficiaries are not faced with the burden of having to pay such expenses with the hopes of being reimbursed by a primary payer like Defendants. MA Plans cannot reasonably expect that a primary payer is liable for such expenses and/or will pay such expenses in a prompt fashion. Accordingly, any payments made by MA Plans, and Medicare for that matter, for accident-related medical expenses are conditional payments subject to reimbursement by a responsible primary payer.

settlements with Enrollees. Specifically, Defendants have entered into settlement agreements with Enrollees as a result of claims arising under liability insurance policies issued by Defendants. Accordingly, Defendants are primary payers under the MSP Law and either should have directly paid the Enrollees' accident-related medical expenses or reimbursed Plaintiffs' assignors and the putative Class Members for the conditional payments they made.

34.     Rather than honor their obligations under the MSP Law, Defendants systematically and deliberately take steps to avoid paying or reimbursing the accident-related medical expenses paid by Plaintiffs' assignors and the Class Members on behalf of Enrollees. These steps include failing to report their primary payer responsibility to CMS and failing to coordinate benefits[6] with MA Plans, including specifically with Plaintiffs on behalf of Plaintiffs' assignors.[7]

35.     Defendants' deliberate non-compliance with reporting requirements under the MSP Law and refusal to coordinate benefits with MA Plans are designed to avoid detection as the primary payer responsible for Enrollees' accident-related medical expenses, ultimately allowing Defendants to avoid their obligations as primary payers. This underreporting/misreporting to CMS regarding payments and beneficiaries is systematic.

36.     Upon information and belief, Defendants have failed to report their primary payer

---

[6] *See* Centers for Medicare and Medicaid Services, Coordination of Benefits and Recovery, Medicare Secondary Payer Overview (Jan. 13, 2014).

[7] Prior to the filing of this lawsuit, Plaintiffs sent correspondence seeking to coordinate benefits with Defendant, as contemplated under 42 C.F.R. § 411.25. Defendants' counsel responded and expressly rejected Plaintiffs' efforts to coordinate benefits. That is, Defendants refused to "provide notice [to Plaintiffs] about [their] primary payment responsibility and information about the underlying MSP situation[.]" 42 C.F.R. § 411.25(a). Further, Defendants refused to "describe the specific situation and the circumstances (including the particular type of insurance coverage as specified in §411.20(a)) and, if appropriate, the time period during which [Defendants were] primary to [Plaintiffs]." 42 C.F.R. § 411.25(b).

responsibility and failed to pay and/or reimburse one or more of the conditional payments made by Plaintiffs' assignors for accident-related medical expenses on behalf of their Enrollees, for which Defendants have a demonstrated responsibility to pay under the MSP Law.

37.     As described in detail herein, Plaintiffs' assignors and the Class Members have each suffered an injury-in-fact as a result of Defendants' failure to meet their statutory payment and reimbursement obligations. This lawsuit seeks to remedy that wrong and advance the interests of the MSP Law and Medicare, because when MA Plans recover conditional payments they "spend less on providing coverage for their enrollees" and the "Medicare Trust Fund . . . achieve[s] cost savings." *In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 685 F.3d 353, 365 (3d Cir. 2012).

38.     Using the proprietary system designed and developed by Plaintiffs' related entity, MSP Recovery, LLC (the "MSP System"), Plaintiffs can capture, compile, synthesize, and funnel large amounts of data, which data is kept in the standard format for storing digital health insurance claims data, or electronic data interchange ("EDI"), called 837P ("837"),[8] to identify claims where Defendants have failed to honor their primary payer responsibilities on a class-wide basis.

39.     The MSP System utilizes ICD-9-CM or ICD-10-CM medical diagnosis codes and DRGs, ICD-9, ICD-10 PCS, HCPCS, or CPT procedure codes to gather information regarding an Enrollee's claim, such as the type of injury suffered, the circumstances that caused the injury, whether the listed primary insurance provider made payment, and whether the insurance carrier was a liability provider.

---

[8] A detailed explanation of CMS' standard for storing digital health insurance claims data is set forth in Appendix 1 to this Complaint. *See also* Centers for Medicare and Medicaid Services, Medicare Learning Network, Medicare Billing: Form CMS-1500 and the 837 Professional (July 2019), *available at* https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNProducts/Downloads/837P-CMS-1500.pdf.

40.     The MSP System captures data from different sources, including CMS and publicly-available police crash and incident reports, to identify unreimbursed conditional payments made by Plaintiffs' assignors for their Enrollees' accident-related medical expenses for which Defendants are responsible as the primary payer. This claims identification process can also be applied class-wide to the data obtained from Class Members. The claims identified by the MSP System are but a fraction of the likely claims at issue in this case. The number and amount of these claims cannot be fully identified without discovery and matching of the Parties' data.

41.     The MSP System can also identify the amounts owed, through a data matching process using Plaintiffs' assignors' EDI, Class Members' EDI and Defendants' EDI, to discover and identify unreimbursed conditional payments made by Plaintiffs' assignors for accident-related medical expenses on behalf of their Enrollees for which Defendants are responsible as the primary payer. This data matching process can also be applied class-wide by matching Defendants' EDI with the Class Members' EDI to identify unreimbursed conditional payments made by the Class Members for accident-related medical expenses on behalf of their Enrollees for which Defendants are responsible.

42.     Using the MSP System, Plaintiffs have identified multiple instances in which Plaintiffs' Assignors made conditional payments for accident-related medical expenses which should have been paid and/or reimbursed by Defendants. Plaintiffs' assignors and the Class Members have each suffered an injury-in-fact as a result of Defendants' failure to meet their statutory payment and reimbursement obligations, including Defendants entering into settlements with Enrollees.

43.     Plaintiffs have identified numerous instances where Defendants admitted, by reporting to CMS, that they were obligated (pursuant to no-fault and other liability policies) to

provide primary payment on behalf of Enrollees. A sample list of such instances is attached hereto as Exhibit A. Again, this list is not complete, and discovery is needed to fully identify the scope of claims, beneficiaries, amounts, and assignors in this case.

44.     Plaintiffs have also identified instances where Defendants are identified in police crash and incident reports[9] as the insurer contractually obligated (pursuant to no-fault policies) to provide primary payment on behalf of Enrollees for unreimbursed conditional payments made by Plaintiffs' assignors in connection with accident-related medical expenses.

45.     The MSP System also identifies numerous other instances in which Plaintiffs' assignors made conditional payments on behalf of Enrollees for which the proper primary payer cannot be identified because (i) the primary payer has failed to report its primary payer responsibility as required by the MSP Law, or (ii) police crash and incident reports that would identify the appropriate primary payer are not available to Plaintiffs in the jurisdiction in which the accident occurred. Utilizing the MSP System to perform data-matching of Plaintiffs' assignors' EDI with Defendants' EDI, however, would allow Plaintiffs to identify with specificity those unreimbursed conditional payments for accident-related medical expenses.

46.     Plaintiffs have standing. To demonstrate standing, Plaintiffs provide details below relating to specific exemplars; however, the claims identified in Exhibit A identify the greater universe of instances where Defendants have failed to pay and/or reimburse conditional payments made by Plaintiffs' assignors for accident-related expenses and also confer standing upon Plaintiffs.

47.     Numerous assignors have assigned their recovery rights to assert the causes of

---

[9] Police crash and incident reports are only publicly available in a handful of jurisdictions, including Connecticut, Florida, Georgia, Ohio and Texas.

action alleged in this Complaint to series LLCs of MSPRC.[10] Pursuant to the assignments, MSPRC maintains the legal right to sue on behalf of each of its designated series LLCs. MSPRC's limited liability agreement and Delaware law provide that all rights arising from the assignment to its series LLCs, along with the right to bring any lawsuit in connection with said assignment, belong to MSPRC:

> Without limiting the foregoing, the Company's purposes include owning and pursuing claims recovery and reimbursement rights assigned to the Company or any of its designated series, by Medicare Advantage Organizations … and other health care organizations or providers authorized by state or federal law … to pay for, provide or arrange for the provision of medical and health care services or supplies to persons, including but not limited to those who are covered under government healthcare programs such as Medicare, Medicare Advantage or Medicaid. The Company will own the assigned rights but may segregate the assignments by establishing series interests pursuant to Title 6, § 18-215 of the Delaware Code to serve as units of the Company. **For avoidance of doubt, the Company is authorized to pursue or assert any claim or suit capable of being asserted by any designated series arising from, or by virtue of, an assignment to a designated series**.

Section 2 of Second Amendment of Limited Liability Company Agreement of MSPRC (amending Section 2.3, entitled "Purpose," to include the language quoted above) (emphasis added). As such, MSPRC has the right and authority to seek reimbursement of Medicare payments made by the assignors that should have been paid by Defendants in the first instance.

48.     Numerous entities have also irrevocably assigned to MSPAC their rights to assert the causes of action alleged in this Complaint. As part of those assignments, MSPAC is empowered to recover reimbursement of conditional payments made by MSPAC's assignors on behalf of their

---

[10] The assignments to the various Series LLCs of MSPRC for the exemplars used to establish standing are alleged in detail in Appendix 2 to this Complaint. However, Plaintiffs seeks recovery on behalf of each of their assignors with claims against Defendants. All the assignments are valid and binding contracts and confer standing on Plaintiffs to pursue the claims asserted herein.

beneficiaries that should have been paid, in the first instance, by Defendants.

49.     Each of the individual claims set forth herein has been assigned to Plaintiffs. The claims are not subject to any carveouts, exclusions, or any other limitations in law or equity that would impair Plaintiffs' right to bring this cause of action.[11]

50.     The allegations set forth herein plainly demonstrate that Plaintiffs' assignors suffered damages as a direct result of Defendants' individual failure to reimburse conditional payments as required under the MSP Law.

51.     In addition, Section 1395y(a)(1)(A) of the Medicare statute states that, "no payment may be made under [the Medicare statute] for any expenses incurred for items or services which ... are not reasonable and necessary for the diagnosis or treatment of illness or injury."

52.     Because this section contains an express condition of payment – that is, "no payment may be made" – it explicitly classifies each Medicare payment for a particular item or service be "reasonable and necessary."

53.     Once an MA Plan makes a payment for medical items and services on behalf of its enrollees, the payment is conclusive proof that the items and services were reasonable and necessary.

54.     The items and services received by and paid on behalf of Plaintiffs' assignors' Enrollees, including the exemplar claims below, were reasonable and necessary to treat the injuries suffered by each of the Enrollees.

55.     Plaintiffs set forth the exemplars below to illustrate Defendants' systematic and uniform failure to fulfill: (i) their statutory duties as a "no-fault" and/or other liability insurer; and

---

[11] Plaintiffs' process for confirming that exemplar claims are not excluded from the assigned claims is alleged in detail in Appendix 2 of this Complaint.

(ii) their statutory duties when entering into settlements. In each of these instances, Defendants have reported and admitted their primary payer status and responsibility for the accident-related medical expenses for medical items and/or services provided to Enrollees within ten (10) days of the accident and for which Plaintiffs' assignors made conditional payments.

### The Exemplar No-Fault Claims

*The D.C. Claim Demonstrates Plaintiffs' Right to Recover for Defendants' Failure to Meet their Reimbursement Obligations under the MSP Law*

56.     On February 22, 2018, D.C. was enrolled in an MA Plan issued and administered by AvMed, Inc., ("AvMed"). AvMed is an MA Plan.

57.     On February 22, 2018, D.C. was injured in an accident. As a direct and proximate result of the accident, D.C. sustained injuries that required medical items and services.

58.     At the time of the accident, D.C.'s accident-related medical costs and expenses were covered under a no-fault policy issued by Defendant United Services Automobile Association under policy number 001394703. By virtue of its no-fault policy, Defendant United Services Automobile Association was contractually obligated to pay and provide primary coverage for D.C.'s accident-related medical expenses.

59.     A list of D.C.'s diagnosis codes and injuries in connection with D.C.'s accident-related treatment is attached hereto as Exhibit B.

60.     The medical services were rendered on February 22, 2018. The medical provider subsequently issued to AvMed bills for payment of D.C.'s accident-related medical expenses.

61.     The medical provider billed and charged AvMed $762.00 for D.C.'s accident-related medical expenses, of which AvMed paid $330.00.

62.     By virtue of a no-fault policy which covered D.C. for the accident-related medical

16

expenses detailed herein, Defendant United Services Automobile Association is a primary payer responsible for payment and/or reimbursement of D.C.'s accident-related medical expenses.

63.     In fact, Defendant United Services Automobile Association reported to CMS information regarding the accident, the name of the reporting entity, and the type of insurance policy involved, and admitted its primary payer status related to payment and/or reimbursement of D.C.'s accident-related medical expenses.

64.     This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse AvMed. Despite reporting that it was a primary payer, and the corresponding admission that it should have paid for D.C.'s accident-related injuries in the first instance, Defendant United Services Automobile Association failed to remit and/or reimburse such payments, giving rise to a claim under the MSP Act.

65.     Accordingly, MSPRC is entitled to collect double damages against Defendant United Services Automobile Association for its failure to reimburse Avmed's conditional payment for D.C.'s accident-related medical expenses.

### The E.G. Claim Demonstrates Plaintiffs' Right to Recover for Defendants' Failure to Meet their Reimbursement Obligations under the MSP Law

66.     On June 11, 2019, E.G. was enrolled in an MA Plan issued and administered by AvMed.

67.     On June 11, 2019, E.G. was injured in an accident. As a direct and proximate result of the accident, E.G. sustained injuries that required medical items and services.

68.     At the time of the accident, E.G.'s accident-related medical costs and expenses were also covered under a no-fault policy issued by Defendant United Services Automobile Association and/or Defendant USAA General Indemnity Company under policy number 003594920 or

003594920G71015. By virtue of the no-fault policy, Defendant United Services Automobile Association and/or Defendant USAA General Indemnity Company were contractually obligated to pay and provide primary coverage for E.G.'s accident-related medical expenses.

69.    A list of E.G.'s diagnosis codes and injuries in connection with E.G.'s accident-related treatment is attached hereto as Exhibit C.

70.    The medical services were rendered on June 11, 2019. The medical provider subsequently issued to AvMed bills for payment of E.G..'s accident-related medical expenses.

71.    The medical provider billed and charged AvMed $384.00 for E.G.'s accident-related medical expenses, of which AvMed paid $65.31.

72.    By virtue of a no-fault policy which covered E.G. for the accident-related medical expenses detailed herein, Defendants United Services Automobile Association and/or Defendant USAA General Indemnity Company are primary payers responsible for payment and/or reimbursement of E.G.'s accident-related medical expenses.

73.    In fact, Defendant United Services Automobile Association reported to CMS information regarding the accident, the name of the reporting entity, and the type of insurance policy involved, and admitted its primary payer status related to payment and/or reimbursement of E.G.'s accident-related medical expenses.

74.    This reporting demonstrates that Defendants were aware of the accident and their responsibility to reimburse AvMed. Despite reporting that it was a primary payer, and the corresponding admission that it should have paid for E.G.'s accident-related injuries in the first instance, Defendant United Services Automobile Association failed to remit and/or reimburse such payments, giving rise to a claim under the MSP Act.

75.    Accordingly, MSPRC is entitled to collect double damages against Defendant

United Services Automobile Association and/or Defendant USAA General Indemnity Company for their failure to reimburse AvMed's conditional payment for E.G.'s accident-related medical expenses.

> ### The G.J. Claim Demonstrates Plaintiffs' Right to Recover for Defendants' Failure to Meet their Reimbursement Obligations under the MSP Law

76.     On September 6, 2018, G.J. was enrolled in an MA Plan issued and administered by AvMed.

77.     On September 6, 2018, G.J. was injured in an accident. As a direct and proximate result of the accident, G.J. sustained injuries that required medical items and services.

78.     At the time of the accident, G.J.'s accident-related medical costs and expenses were covered under a no-fault policy issued by Defendant United Services Automobile Association under policy number 025091285. By virtue of its no-fault policy, Defendant United Services Automobile Association was contractually obligated to pay and provide primary coverage for G.J.'s accident-related medical expenses.

79.     A list of G.J.'s diagnosis codes and injuries in connection with G.J.'s accident-related treatment is attached hereto as Exhibit D.

80.     The medical services were rendered between September 6, 2018 and October 19, 2018. The medical providers subsequently issued to AvMed bills for payment of G.J.'s accident-related medical expenses.

81.     The medical providers billed and charged AvMed $27,289.35 for G.J.'s accident-related medical expenses, of which AvMed paid $3,776.24.

82.     By virtue of a no-fault policy which covered G.J. for the accident-related medical expenses detailed herein, Defendant United Services Automobile Association is a primary payer

responsible for payment and/or reimbursement of G.J.'s accident-related medical expenses.

83.     In fact, Defendant United Services Automobile Association reported to CMS information regarding the accident, the name of the reporting entity, and the type of insurance policy involved, and admitted its primary payer status related to payment and/or reimbursement of G.J.'s accident-related medical expenses.

84.     This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse AvMed. Despite reporting that it was a primary payer, and the corresponding admission that it should have paid for G.J.'s accident-related injuries in the first instance, Defendant United Services Automobile Association failed to remit and/or reimburse such payments, giving rise to a claim under the MSP Act.

85.     Accordingly, MSPRC is entitled to collect double damages against Defendant United Services Automobile Association for its failure to reimburse AvMed's conditional payment for G.J.'s accident-related medical expenses.

### The G.P. Claim Demonstrates Plaintiffs' Right to Recover for Defendants' Failure to Meet their Reimbursement Obligations under the MSP Law

86.     On September 23, 2018, G.P. was enrolled in an MA Plan issued and administered by AvMed.

87.     On September 23, 2018, G.P. was injured in an accident. As a direct and proximate result of the accident, G.P. sustained injuries that required medical items and services.

88.     At the time of the accident, G.P.'s accident-related medical costs and expenses were covered under a no-fault policy issued by Defendant United Services Automobile Association under policy number 011681943. By virtue of its no-fault policy, Defendant United Services Automobile Association was contractually obligated to pay and provide primary coverage for

G.P.'s accident-related medical expenses.

89.     A list of G.P.'s diagnosis codes and injuries in connection with G.P.'s accident-related treatment is attached hereto as Exhibit E.

90.     The medical services were rendered on September 23, 2018. The medical providers subsequently issued to AvMed bills for payment of G.P.'s accident-related medical expenses.

91.     The medical providers billed and charged AvMed $14,063.00 for G.P.'s accident-related medical expenses, of which AvMed paid $6,172.35.

92.     By virtue of a no-fault policy which covered G.P. for the accident-related medical expenses detailed herein, Defendant United Services Automobile Association is a primary payer responsible for payment and/or reimbursement of G.P.'s accident-related medical expenses.

93.     In fact, Defendant United Services Automobile Association reported to CMS information regarding the accident, the name of the reporting entity, and the type of insurance policy involved, and admitted its primary payer status related to payment and/or reimbursement of G.P.'s accident-related medical expenses.

94.     This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse AvMed. Despite reporting that it was a primary payer, and the corresponding admission that it should have paid for G.P.'s accident-related injuries in the first instance, Defendant United Services Automobile Association failed to remit and/or reimburse such payments, giving rise to a claim under the MSP Act.

95.     Accordingly, MSPRC is entitled to collect double damages against Defendant United Services Automobile Association for its failure to reimburse AvMed's conditional payment for G.P.'s accident-related medical expenses.

*The J.C. Claim Demonstrates Plaintiffs' Right to Recover for Defendants'*
*Failure to Meet their Reimbursement Obligations under the MSP Law*

96.     On February 22, 2018, J.C. was enrolled in an MA Plan issued and administered by Avmed.

97.     On February 22, 2018, J.C. was injured in an accident. As a direct and proximate result of the accident, J.C. sustained injuries that required medical items and services.

98.     At the time of the accident, J.C.'s accident-related medical costs and expenses were covered under a no-fault policy issued by Defendant United Services Automobile Association under policy number 001394703. By virtue of its no-fault policy, Defendant United Services Automobile Association was contractually obligated to pay and provide primary coverage for J.C.'s accident-related medical expenses.

99.     A list of J.C.'s diagnosis codes and injuries in connection with J.C.'s accident-related treatment is attached hereto as Exhibit F.

100.    The medical services were rendered between February 22, 2018 and April 23, 2018. The medical providers subsequently issued to AvMed bills for payment of J.C.'s accident-related medical expenses.

101.    The medical providers billed and charged AvMed $2,955.48 for J.C.'s accident-related medical expenses, of which AvMed paid $867.45.

102.    By virtue of a no-fault policy which covered J.C. for the accident-related medical expenses detailed herein, Defendant United Services Automobile Association is a primary payer responsible for payment and/or reimbursement of J.C.'s accident-related medical expenses.

103.    In fact, Defendant United Services Automobile Association reported to CMS information regarding the accident, the name of the reporting entity, and the type of insurance policy involved, and admitted its primary payer status related to payment and/or reimbursement of

J.C.'s accident-related medical expenses.

104.    This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse AvMed. Despite reporting that it was a primary payer, and the corresponding admission that it should have paid for J.C.'s accident-related injuries in the first instance, Defendant United Services Automobile Association failed to remit and/or reimburse such payments, giving rise to a claim under the MSP Act.

105.    Accordingly, MSPRC is entitled to collect double damages against Defendant United Services Automobile Association for its failure to reimburse AvMed's conditional payment for J.C.'s accident-related medical expenses.

> ### *The V.S. Claim Demonstrates Plaintiffs' Right to Recover for Defendants' Failure to Meet their Reimbursement Obligations under the MSP Law*

106.    On June 25, 2017, V.S. was enrolled in an MA Plan issued and administered by AvMed.

107.    On June 25, 2017, V.S. was injured in an accident. As a direct and proximate result of the accident, V.S. sustained injuries that required medical items and services.

108.    At the time of the accident, V.S.'s accident-related medical costs and expenses were covered under a no-fault policy issued by Defendant United Services Automobile Association and/or Defendant USAA General Indemnity Company under policy number 036180149 or 036180149G71021. By virtue of the no-fault policy, Defendant United Services Automobile Association and/or Defendant USAA General Indemnity Company were contractually obligated to pay and provide primary coverage for V.S.'s accident-related medical expenses.

109.    A list of V.S.'s diagnosis codes and injuries in connection with V.S.'s accident-related treatment is attached hereto as Exhibit G.

110.    The medical services were rendered between June 25, 2017 and August 14, 2017. The medical providers subsequently issued to AvMed bills for payment of V.S.'s accident-related medical expenses.

111.    The medical providers billed and charged AvMed $6,848.85 for V.S.'s accident-related medical expenses, of which AvMed paid $5,503.13.

112.    By virtue of a no-fault policy which covered V.S. for the accident-related medical expenses detailed herein, Defendants United Services Automobile Association and/or Defendant USAA General Indemnity Company are primary payers responsible for payment and/or reimbursement of V.S.'s accident-related medical expenses.

113.    In fact, Defendant United Services Automobile Association reported to CMS information regarding the accident, the name of the reporting entity, and the type of insurance policy involved, and admitted its primary payer status related to payment and/or reimbursement of V.S.'s accident-related medical expenses.

114.    This reporting demonstrates that Defendants were aware of the accident and their responsibility to reimburse AvMed. Despite reporting that it was a primary payer, and the corresponding admission that it should have paid for V.S.'s accident-related injuries in the first instance, Defendant United Services Automobile Association failed to remit and/or reimburse such payments, giving rise to a claim under the MSP Act.

115.    Accordingly, MSPRC is entitled to collect double damages against Defendant United Services Automobile Association and Defendant USAA General Indemnity Company for their failure to reimburse AvMed's conditional payment for V.S.'s accident-related medical expenses.

### The Exemplar Settlement Claims

***The B.L. Claim Demonstrates Plaintiffs' Right to Recover for Defendants' Failure to Reimburse upon Entering into Settlements with Medicare Beneficiaries***

116.    On June 19, 2016, B.L. was enrolled in an MA Plan issued and administered by ConnectiCare, Inc. ("ConnectiCare"). ConnectiCare is an MA Plan.

117.    On June 19, 2016, B.L. was injured in an accident. As a direct and proximate result of the accident, B.L. sustained injuries that required medical items and services.

118.    The tortfeasor responsible for the accident was insured by Defendant United Services Automobile Association under policy number 0080604654.

119.    A list of B.L.'s diagnosis codes and injuries in connection with B.L.'s accident-related treatment is attached hereto as Exhibit H.

120.    The medical services were rendered between June 19, 2016 and November 2, 2016. The medical providers subsequently issued bills to ConnectiCare for payment of B.L.'s accident-related medical expenses.

121.    The medical providers billed and charged ConnectiCare $21,608.73 for B.L.'s accident-related medical expenses, of which ConnectiCare paid $3,600.05.

122.    Following B.L.'s claim against Defendant's insured, Defendant indemnified its insured tortfeasor and made payments pursuant to a settlement with B.L. By entering into that settlement and releasing all claims, including medical expenses, Defendant United Services Automobile Association is a primary payer responsible for payment and/or reimbursement of B.L.'s accident-related medical expenses.

123.    In fact, Defendant United Services Automobile Association reported to CMS information regarding the accident, the name of the reporting entity, and the type of insurance

policy involved, and admitted its primary payer status related to payment and/or reimbursement of B.L.'s accident-related medical expenses.

124.    This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse ConnectiCare. Despite reporting that it was a primary payer, and the corresponding admission that it should have paid for B.L.'s accident-related injuries, Defendant United Services Automobile Association failed to remit and/or reimburse such payments, giving rise to a claim under the MSP Law.

125.    Accordingly, MSPRC is entitled to collect double damages against Defendant United Services Automobile Association for its failure to reimburse ConnectiCare's conditional payment for B.L.'s accident-related expenses.

126.    Upon receipt of the settlement agreement between Defendant United Services Automobile Association and B.L., MSPRC reserves the right to amend this Complaint to pursue reimbursement for B.L.'s medical expenses against any of Defendant's affiliates that entered into a release with B.L.

### The H.B. Claim Demonstrates Plaintiffs' Right to Recover for Defendants' Failure to Reimburse upon Entering into Settlements with Medicare Beneficiaries

127.    On May 8, 2017, H.B. was enrolled in an MA Plan issued and administered by ConnectiCare.

128.    On May 8, 2017, H.B. was injured in an accident. As a direct and proximate result of the accident, H.B. sustained injuries that required medical items and services.

129.    The tortfeasor responsible for the accident was insured by Defendant United Services Automobile Association under policy number 0062008889.

130.    A list of H.B.'s diagnosis codes and injuries in connection with H.B.'s accident-

related treatment is attached hereto as Exhibit I.

131.     The medical services were rendered between May 9, 2017 and June 15, 2017. The medical providers subsequently issued bills to ConnectiCare for payment of H.B.'s accident-related medical expenses.

132.     The medical providers billed and charged ConnectiCare $1,132.00 for H.B.'s accident-related medical expenses, of which ConnectiCare paid $293.24.

133.     Following H.B.'s claim against Defendant's insured, Defendant indemnified its insured tortfeasor and made payments pursuant to a settlement with H.B. By entering into that settlement and releasing all claims, including medical expenses, Defendant United Services Automobile Association is a primary payer responsible for payment and/or reimbursement of H.B.'s accident-related medical expenses.

134.     In fact, Defendant United Services Automobile Association reported to CMS information regarding the accident, the name of the reporting entity, and the type of insurance policy involved, and admitted its primary payer status related to payment and/or reimbursement of H.B.'s accident-related medical expenses.

135.     This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse ConnectiCare. Despite reporting that it was a primary payer, and the corresponding admission that it should have paid for H.B.'s accident-related injuries, Defendant United Services Automobile Association failed to remit and/or reimburse such payments, giving rise to a claim under the MSP Law.

136.     Accordingly, MSPRC is entitled to collect double damages against Defendant United Services Automobile Association for its failure to reimburse ConnectiCare's conditional payment for H.B.'s accident-related expenses.

137.     Upon receipt of the settlement agreement between Defendant United Services Automobile Association and H.B., MSPRC reserves the right to amend this Complaint to pursue reimbursement for H.B.'s medical expenses against any of Defendant's affiliates that entered into a release with H.B.

### The J.M. Claim Demonstrates Plaintiffs' Right to Recover for Defendants' Failure to Reimburse upon Entering into Settlements with Medicare Beneficiaries

138.     On June 18, 2016, J.M. was enrolled in an MA Plan issued and administered by ConnectiCare.

139.     On June 18, 2016, J.M. was injured in an accident. As a direct and proximate result of the accident, J.M. sustained injuries that required medical items and services.

140.     The tortfeasor responsible for the accident was insured by Defendant United Services Automobile Association under policy number 0157663046.

141.     A list of J.M.'s diagnosis codes and injuries in connection with J.M.'s accident-related treatment is attached hereto as Exhibit J.

142.     The medical services were rendered between June 18, 2016 and July 22, 2016. The medical providers subsequently issued bills to ConnectiCare for payment of J.M.'s accident-related medical expenses.

143.     The medical providers billed and charged ConnectiCare $11,405.45 for J.M.'s accident-related medical expenses, of which ConnectiCare paid $790.93.

144.     Following J.M.'s claim against Defendant's insured, Defendant indemnified its insured tortfeasor and made payments pursuant to a settlement with J.M. By entering into that settlement and releasing all claims, including medical expenses, Defendant United Services Automobile Association is a primary payer responsible for payment and/or reimbursement of

J.M.'s accident-related medical expenses.

145.     In fact, Defendant United Services Automobile Association reported to CMS information regarding the accident, the name of the reporting entity, and the type of insurance policy involved, and admitted its primary payer status related to payment and/or reimbursement of J.M.'s accident-related medical expenses.

146.     This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse ConnectiCare. Despite reporting that it was a primary payer, and the corresponding admission that it should have paid for J.M.'s accident-related injuries, Defendant United Services Automobile Association failed to remit and/or reimburse such payments, giving rise to a claim under the MSP Law.

147.     Accordingly, MSPRC is entitled to collect double damages against Defendant United Services Automobile Association for its failure to reimburse ConnectiCare's conditional payment for J.M.'s accident-related expenses.

148.     Upon receipt of the settlement agreement between Defendant United Services Automobile Association and J.M., MSPRC reserves the right to amend this Complaint to pursue reimbursement for J.M.'s medical expenses against any of Defendant's affiliates that entered into a release with J.M.

### The J.S. Claim Demonstrates Plaintiffs' Right to Recover for Defendants' Failure to Reimburse upon Entering into Settlements with Medicare Beneficiaries

149.     On January 21, 2016, J.S. was enrolled in an MA Plan issued and administered by ConnectiCare.

150.     On January 21, 2016, J.S. was injured in an accident. As a direct and proximate result of the accident, J.S. sustained injuries that required medical items and services.

151.   The tortfeasor responsible for the accident was insured by Defendant United Services Automobile Association under policy number 007482557.

152.   A list of J.S.'s diagnosis codes and injuries in connection with J.S.'s accident-related treatment is attached hereto as Exhibit K.

153.   The medical services were rendered between January 21, 2016 and April 28, 2016. The medical providers subsequently issued bills to ConnectiCare for payment of J.S.'s accident-related medical expenses.

154.   The medical providers billed and charged ConnectiCare $131,772.34 for J.S.'s accident-related medical expenses, of which ConnectiCare paid $36,409.09.

155.   Following J.S.'s claim against Defendant's insured, Defendant indemnified its insured tortfeasor and made payments pursuant to a settlement with J.S. By entering into that settlement and releasing all claims, including medical expenses, Defendant United Services Automobile Association is a primary payer responsible for payment and/or reimbursement of J.S.'s accident-related medical expenses.

156.   In fact, Defendant United Services Automobile Association reported to CMS information regarding the accident, the name of the reporting entity, and the type of insurance policy involved, and admitted its primary payer status related to payment and/or reimbursement of J.S.'s accident-related medical expenses.

157.   This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse ConnectiCare. Despite reporting that it was a primary payer, and the corresponding admission that it should have paid for J.S.'s accident-related injuries, Defendant USAA failed to remit and/or reimburse such payments, giving rise to a claim under the MSP Law.

158.   Accordingly, MSPRC is entitled to collect double damages against Defendant

United Services Automobile Association for its failure to reimburse ConnectiCare's conditional payment for J.S.'s accident-related expenses.

159.    Upon receipt of the settlement agreement between Defendant United Services Automobile Association and J.S., MSPRC reserves the right to amend this Complaint to pursue reimbursement for J.S.'s medical expenses against any of Defendant's affiliates that entered into a release with J.S.

> ### The L.B. Claim Demonstrates Plaintiffs' Right to Recover for Defendants' Failure to Reimburse upon Entering into Settlements with Medicare Beneficiaries

160.    On January 21, 2015, L.B. was enrolled in an MA Plan issued and administered by ConnectiCare.

161.    On January 1, 2015, L.B. was injured in an accident. As a direct and proximate result of the accident, L.B. sustained injuries that required medical items and services.

162.    The tortfeasor responsible for the accident was insured by Defendant United Services Automobile Association under policy number 042426510.

163.    A list of L.B.'s diagnosis codes and injuries in connection with L.B.'s accident-related treatment is attached hereto as Exhibit L.

164.    The medical services were rendered between January 21, 2015 and March 16, 2015. The medical providers subsequently issued bills to ConnectiCare for payment of L.B.'s accident-related medical expenses.

165.    The medical providers billed and charged ConnectiCare $4,357.56 for L.B.'s accident-related medical expenses, of which ConnectiCare paid $1,144.55.

166.    Following L.B.'s claim against Defendant's insured, Defendant indemnified its insured tortfeasor and made payments pursuant to a settlement with L.B. By entering into that

settlement and releasing all claims, including medical expenses, Defendant United Services Automobile Association is a primary payer responsible for payment and/or reimbursement of L.B.'s accident-related medical expenses.

167.    In fact, Defendant United Services Automobile Association reported to CMS information regarding the accident, the name of the reporting entity, and the type of insurance policy involved, and admitted its primary payer status related to payment and/or reimbursement of L.B.'s accident-related medical expenses.

168.    This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse ConnectiCare. Despite reporting that it was a primary payer, and the corresponding admission that it should have paid for L.B.'s accident-related injuries, Defendant United Services Automobile Association failed to remit and/or reimburse such payments, giving rise to a claim under the MSP Law.

169.    Accordingly, MSPRC is entitled to collect double damages against Defendant United Services Automobile Association for its failure to reimburse ConnectiCare's conditional payment for L.B.'s accident-related expenses.

170.    Upon receipt of the settlement agreement between Defendant United Services Automobile Association and L.B., MSPRC reserves the right to amend this Complaint to pursue reimbursement for L.B.'s medical expenses against any of Defendant's affiliates that entered into a release with L.B.

## CLASS ACTION ALLEGATIONS

171.    This matter is brought as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of all Class Members or their assignees who paid for their beneficiaries' accident-

related medical expenses, when Defendants should have made those payments as primary payers in the first instance or reimbursed the Class Members.

172.    As discussed in this class action Complaint, Defendants have failed to provide primary payment and/or appropriately reimburse the Class Members for money they were statutorily required to pay under the MSP Law. This failure to reimburse applies to Plaintiffs, as the rightful assignees of those organizations that assigned their recovery rights to Plaintiffs and to all Class Members. Class action law has long recognized that when a company engages in conduct that has uniformly harmed a large number of claimants, class resolution is an effective tool to redress the harm. This case is well suited for class-wide resolution.

173.    Class Members have been unlawfully burdened with paying for the medical costs of their beneficiaries when the law explicitly requires Defendants to make such payments. The Medicare Act and its subsequent amendments were constructed to ensure an efficient and cost-effective system of cooperation and communication between primary and secondary payers. Defendants' failure to reimburse Plaintiffs' assignors and Class Members runs afoul of the Medicare Act and has directly contributed to the ever-increasing costs of the Medicare system.

174.    The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, adequacy, and ascertainability shown as follows:

a. **<u>Numerosity</u>**:   Joinder of all members is impracticable. Upon information and belief, there are hundreds of MA Plans and first tier entities (including their assignees) throughout the United States who (1) were not reimbursed by Defendants under a policy which provided PIP or Med Pay coverage for medical expenses arising out of accidents or (2) were not reimbursed by Defendants after

they entered into a settlement with a Medicare beneficiary enrolled in a MA Plan administered by an MA Plan. Thus, the numerosity element for class certification is met.

b. **<u>Commonality</u>**:  Questions of law and fact are common to all members of the Class. Specifically, Defendants' misconduct was directed at all Class Members, their affiliates, and those respective organizations that contracted with CMS and were identified as "secondary payers" by Medicare Part C. Defendants failed to reimburse conditional payments, report settlements and report their Ongoing Responsibility for Medicals ("ORM") involving clients who were Medicare beneficiaries, and ensure that Medicare remained a secondary payer, as a matter of course. Thus, all Class Members have common questions of fact and law, *i.e.*, whether Defendants failed to comport with their statutory duty to pay or reimburse MA Plans pursuant to the MSP Law. Each Class Member shares the same needed remedy, *i.e.*, reimbursement. Plaintiffs seek to enforce their own rights, as well as the reimbursement rights of the Class Members, for medical payments made on behalf of their Enrollees, as a result of Defendants' practice and course of conduct in failing to make primary payment or properly providing appropriate reimbursement.

c. **<u>Typicality</u>**:  Plaintiffs' claims are typical of the Class Members' claims, as all have been damaged in the same manner. Plaintiffs' and the Class Members' claims have the same essential characteristics, arise from the same course of conduct, and share the same legal theory. As the putative class representatives, Plaintiffs possess the same interests and suffered the same injury as the other Class Members, thereby

demonstrating a legally sufficient nexus between Plaintiffs' claims and the Class Members' claims. Plaintiffs' claims are typical of the Class Members' claims because Defendants failed to make primary payments for Enrollees' accident-related medical expenses, which they were obligated to do by their settlements or contractual obligations with Enrollees. Plaintiffs' claims are typical because Plaintiffs, like the Class Members, have a right to relief for Defendants' failure to make primary payments or reimburse Plaintiffs' assignors and the Class Members for their conditional payments of Enrollees' accident-related medical expenses. Plaintiffs' and the Class Members' claims are based on the same statutes, regulations, legal theories and factual situations. Defendants' business practices, acts and omissions are materially the same with respect to Plaintiffs' and the Class Members' claims, as will be Defendants' legal defenses. Plaintiffs' claims are, therefore, typical of the Class.

d. **<u>Adequacy</u>**:  Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs' interests in vindicating these claims are shared with all members of the Class and there are no conflicts between the named Plaintiffs and the putative Class Members. In addition, Plaintiffs are represented by counsel who are competent and experienced in class action litigation and also have no conflicts.

e. **<u>Ascertainability</u>**: Locating members of the Class would be relatively simple, since CMS maintains records of all MA Plans, first tier entities, and downstream entities, and providing notice to such entities could be accomplished by direct communication.

175.   The Class is properly brought and should be maintained as a class action under Rule

23(b)(3) because a class action in this context is superior. Pursuant to Rule 23(b)(3), common issues of law and fact predominate over any questions affecting only individual members of the Class ("Damages Class"). Defendants, whether deliberately or not, failed to make required payments under the MSP Law and failed to reimburse Class Members and those organizations that assigned their recovery rights to Plaintiffs, thus depriving Plaintiffs, as assignees of the right to recovery, and Class Members of their statutory right to payment and reimbursement.

176.   It is the custom and practice of CMS and primary plans to maintain records in a detailed electronic format. Based on these practices, Plaintiffs maintain a reasonable methodology for generalized proof of class-wide impact using the MSP System. The MSP System captures, compiles, synthesizes and analyzes large amounts of data to identify claims for reimbursement of conditional payments. This case will not present manageability problems as compared to non-electronic data driven class actions. There is no need for a fact-specific individual analysis of intent or causation, and damages will be calculated based upon the total fee-for-service amounts associated with the payments made on behalf of Enrollees. Plaintiffs are capable of using the MSP System to identify and quantify Class Members' claims, as it has done for its own claims.

177.   Proceeding with a Damages Class is superior to other methods for fair and efficient adjudication of this controversy because, *inter alia*, such treatment will allow a large number of similarly-situated assignors to litigate their common claims simultaneously, efficiently, and without the undue duplications of effort, evidence, and expense that several individual actions would induce; individual joinder of the individual members is wholly impracticable; the economic damages suffered by the individual class members may be relatively modest compared to the expense and burden of individual litigation; and the court system would benefit from a class action because individual litigation would overload court dockets and magnify the delay and expense to

all parties. The class action device presents far fewer management difficulties and provides the benefit of comprehensive supervision by a single court with economies of scale.

178.     Administering the proposed Damages Class will be relatively simple. Defendants provided no-fault and other liability policies to claimants who are also Medicare beneficiaries. Once that data identifying these policies is compiled and organized, Plaintiffs can determine which claimants and/or policyholders were Medicare beneficiaries during the applicable time. Then, using the database, Plaintiffs and the Class Members can identify unreimbursed payments made for accident-related medical expenses where Defendants were primary payers.

## **CLASS DEFINITION**

179.     The putative class (referred to herein as "Class Members") is defined as:

### **Contractual Obligations Class**

All Medicare Advantage Plans (or their assignees) that provide benefits under Medicare Part C, in the United States of America and its territories, who made payments for a Medicare Enrollee's medical items and services within the last six years from the filing of the complaint where Defendant:

(1) is the primary payer by virtue of having a contractual obligation to pay for the items and services that are required to be covered by the policy of insurance of the same Medicare Enrollees; and

(2) failed to pay for the items and services or otherwise failed to reimburse Medicare Advantage Plans (or their assignees) for the items and services that were provided related to the claims of the Medicare Enrollees;

This class definition excludes (a) Defendants, their officers, directors, management, employees, subsidiaries, and affiliates; and (b) any judges or justices involved in this action and any members of their immediate families.

### **Settlement Class**

All Medicare Advantage Plans (or their assignees) that provide benefits under Medicare Part C, in the United States of America and its territories, who made payments for a Medicare Enrollee's medical expenses where Defendant:

(1) is the primary payer by virtue of having settled a claim with a Medicare Advantage

Plan Enrollee;

(2) settled a dispute to pay for medical expenses with a Medicare Advantage Plan Enrollee; and

(3) failed to reimburse Medicare Advantage Plans (or their assignees) for their conditional payments upon settling with a Medicare Enrollee.

This class definition excludes (a) Defendants, their officers, directors, management, employees, subsidiaries, and affiliates; and (b) any judges or justices involved in this action and any members of their immediate families.

180.    All conditions precedent to the filing of this lawsuit have occurred, been performed, or have been otherwise waived by Defendants.

## CAUSES OF ACTION

181.    Plaintiffs' claims result from Defendants' failure to pay or reimburse Medicare payments which are secondary, as a matter of law, and must be reimbursed if a primary payer is available. Defendants issue liability insurance policies and are thus primary payers liable under the MSP Law.

## COUNT I
### Private Cause of Action Under 42 U.S.C. § 1395y(b)(3)(A)

182.    Plaintiffs re-allege and incorporate herein by reference each of the allegations contained in the preceding paragraphs as if fully set forth herein.

183.    Plaintiffs assert a private cause of action pursuant to 42 U.S.C. § 1395y(b)(3)(A) on behalf of themselves and all similarly situated parties.

184.    The elements of a cause of action under 42 U.S.C. § 1395y(b)(3)(A) are: (1) the defendant's status as a primary plan; (2) the defendant's failure to provide for primary payment or appropriate reimbursement; and (3) damages. *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1239 (11th Cir. 2016).

185.    Defendants' no-fault and liability policies are primary plans, which rendered

Defendants primary payers for accident-related medical expenses.

186.     As part of providing Medicare benefits to Medicare beneficiaries enrolled under the Medicare Advantage program, the Class Members and Plaintiffs' assignors paid for items and services which were also covered by no-fault policies issued by Defendants.

187.     More specifically, Plaintiffs' and the Class Members' Enrollees were also covered by no-fault, PIP, or Med Pay policies issued by Defendants.

188.     In addition, Defendants entered into settlements with Enrollees of Plaintiffs' assignors relating to accidents, but, failed to reimburse Plaintiffs' assignors and the putative Class Members for accident-related medical expenses paid by Plaintiffs' assignors and the putative Class Members on behalf of Enrollees. Defendants are liable for reimbursement of these accident-related medical expenses even if they subsequently paid out the maximum benefits under the policies.

189.     Because Defendants are primary payers, the Medicare payments for which Plaintiffs seek reimbursement were conditional payments under the MSP Law.

190.     Defendants were required to timely reimburse Plaintiffs' assignors and Class Members for their conditional payments of Enrollees' accident-related medical expenses. *See* 42 U.S.C. § 1395y(b)(2)(ii); 42 C.F.R. § 411.22(b)(3); *MSP Recovery, LLC v. Allstate Ins. Co.*, 835 F.3d 1351, 1355 (11th Cir. 2016). Defendants failed to do so.

191.     Plaintiffs and the Class Members have suffered money damages as a direct result of Defendants' failure to reimburse the accident-related medical expenses.

192.     Defendants have derived substantial profits by placing the burden of financing medical treatments for their policyholders on the shoulders of Plaintiffs' assignors and the Class Members.

193.     In this case, Defendants failed to administratively appeal Plaintiffs' assignors'

rights to reimbursement within the administrative remedies period on a class-wide basis. Defendants, therefore, are time-barred from challenging the propriety of amounts paid.

194.    Plaintiffs, for themselves and on behalf of the Class Members, brings this claim pursuant to 42 U.S.C. § 1395y(b)(3)(A), to recover double damages from Defendants for their failure to make appropriate and timely reimbursement of conditional payments for Enrollees' accident-related medical expenses.

## COUNT II
### Direct Right of Recovery Pursuant to 42 C.F.R. § 411.24(e) for Breach of Contract

195.    Plaintiffs re-allege and incorporate herein by reference each of the allegations contained in the preceding paragraphs as if fully set forth herein.

196.    Pursuant to the MSP Law, Plaintiffs' assignors are subrogated to the right to recover unreimbursed conditional payments from Defendants for Defendants' breach of contract with their insured. Specifically, Defendants were contractually obligated to pay for medical expenses and items arising out of an accident, and Defendants failed to meet that obligation. This obligation was, instead, fulfilled by Plaintiffs' assignors and other Class Members. Under the MSP Law, Plaintiffs are permitted, standing in their assignors' shoes, to subrogate the Enrollee's/insured's right of action against Defendants. *See* 42 C.F.R. § 411.26.

197.    Plaintiffs complied with any conditions precedent to the filing of this action, to the extent applicable.

198.    Defendants failed and/or refused to make complete payments for Enrollees' accident-related expenses as required by its contractual obligations.

199.    Defendants failed to pay each Enrollee's covered losses, and Defendants have no reasonable proof to establish that they were not primary payers and, therefore, not responsible for the payment.

200.    Defendants' failure to pay the medical services and/or items damaged Plaintiffs and the Class Members as set forth herein. Plaintiffs' assignors and the Class Members processed and paid accident-related medical expenses and are entitled to recover up to the statutory policy limits for each Enrollee's medical expenses related to the subject accidents, pursuant to their agreements with CMS and the provider of services.

## JURY TRIAL DEMAND

201.    Plaintiffs demand a trial by jury on all of the triable issues within this pleading.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Class Members described herein, pray for the following relief:

a.  find that this action satisfies the prerequisites for maintenance of a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), and certify the respective Class;

b.  designate Plaintiffs as representatives for the respective Class Members and Plaintiffs' undersigned counsel as Class Counsel for the respective Class; and

c.  issue a judgment against Defendants that:

i.    grants Plaintiffs and the Class Members reimbursement of double damages for those monies to which the Class is entitled under 42 U.S.C. § 1395y(b)(3)(A), as alleged in Count I;

ii.    grants Plaintiffs and the Class Members reimbursement of damages for those monies to which the Class is entitled pursuant to their direct right of recovery for breach of contract, as alleged in Count II;

iii.    grants Plaintiffs and the Class Members pre-judgment and post-judgment interest consistent with the statute; and

iv.    grants Plaintiffs and the Class Members such other and further relief as the Court deems just and proper under the circumstances.

Dated: April 9, 2020              Respectfully Submitted:

*/s/ Francesco A. Zincone*
Francesco A. Zincone
Florida Bar No. 100096
**ARMAS BERTRAN PIERI**
4960 SW 72nd Avenue, Suite 206
Miami, Florida 33155
Telephone:     (305) 461-5100
fzincone@armaslaw.com

Christopher L. Coffin (to be admitted *pro hac vice*)
Tracy L. Turner (to be admitted *pro hac vice*)
Shannon A. Shelton (to be admitted *pro hac vice*)
**PENDLEY, BAUDIN & COFFIN, LLP**
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Telephone:     (504) 355-0086
Facsimile:      (504) 355-0089
ccoffin@pbclawfirm.com
tturner@pbclawfirm.com
sshelton@pbclawfirm.com

*Counsel for Plaintiffs*

**APPENDIX 1**

**CMS' Standard for Storing Digital Health Insurance Claims Data**

1.       It is the custom and practice of CMS and primary plans to maintain records in a detailed electronic format. According to the U.S. Department of Health and Human Services (HHS), CMS, federal statutes, and industry best practices and guidelines, the standard format for storing digital health insurance claims data is an electronic data interchange ("EDI") format called 837P ("837").

   a.   The 837 standard is mandated by the federal government and used federal and state payors such as Medicare and Medicaid.

   b.   The 837 standard is also used by private insurers, hospitals, clinics, physicians and other health care providers (i.e., HIPAA covered entities) who typically adopt CMS standards.

   c.   Paper claims are captured in the CMS 1500, UB04, and UB92 forms, but electronically, the standard for storing data is the 837 format.

2.       Essential components of an 837-claim file include but are not limited to the date(s) of service, diagnosis code(s) and medical procedure code(s).

   a.   <u>Dates (including dates of service)</u>: the standard format for dates in electronic health care claims is YYYYMMDD, CCYYMMDD, or MM/DD/YYYY.

      i.   According to industry best practices and guidelines, and HHS and CMS, the standard format for expressing dates in healthcare insurance claims data is CCYYMMDD (CC representing two numeric digits to indicate Century, YY representing two numeric digits for year, MM representing two digits for the month, and DD representing two digits for the day of the month).

i

Sometimes this is alternately expressed as YYYYMMDD.[12]

ii.   The CCYYMMDD date format standard has been in place for many years. *See* CMS Guidance for 2010[13], 2011[14], 2012[15], 2013[16], 2014[17], and 2016.[18]

iii.   CMS has also accepted the MM/DD/YYYY format for its local coverage determination data.[19]

---

[12] *See* the Medicare Claims Processing Manual Chapter 3 and CMS Manual System, Pub 100-08 Medicare Program Integrity, Transmittal 721.

[13] CMS Manual System, Pub 100-20 One-Time Notification, Transmittal 761 (Aug. 20, 2010), *available at* https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/R761OTN.pdf.

[14] CMS Manual System, Pub 100-20 One-Time Notification, Transmittal 988 (Oct. 28, 2011), *available at* https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/R988OTN.pdf.

[15] CMS Manual System, Pub 100-20 One-Time Notification, Transmittal 1050 (Feb. 29, 2012), *available at*  https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/Downloads/R1050OTN-.pdf.

[16] CMS Manual System, Pub 100-20 One-Time Notification, Transmittal 1277 (Aug. 9, 2013), *available at* https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/R1277OTN.pdf.

[17] Memorandum from Tracey McCutcheon, Acting Director, Medicare Drug Benefit and C & D Data Group, and Laurence Wilson, Director, Chronic Care Policy Group, to All Part D Plan Sponsors and Medicare Hospice Providers (Mar. 10, 2014) (on file with author), *available at* https://www.cms.gov/Medicare/Medicare-Fee-for-Service-Payment/Hospice/Downloads/Part-D-Payment-Hospice-Final-2014-Guidance.pdf.

[18] Memorandum from Cheri Rice, Director, Medicare Plan Payment Group, and Cathy Carter, Director, Enterprise Systems Solutions Group, to All Medicare Advantage, Prescription Drug Plan, Cost, PACE, and Demonstration Organizations Systems Staff (Nov. 9, 2016) (on file with author), *available at* https://www.cms.gov/Research-Statistics-Data-and-Systems/CMS-Information-Technology/mapdhelpdesk/Downloads/Announcement-of-the-February-2017-Software-Release.pdf.

[19] Local Coverage Determination (LCD) Date of Service Criteria, *available at* https://www.cms.gov/medicare-coverage-database/search/lcd-date-search.aspx?DocID=L35093&bc=gAAAAAAAAAAAA.

     iv. The purpose of the date format is to ensure that dates of health care claims such as the date a medical procedure was provided (date of service or "DOS") in comparison to the date of settlement, can be searched, sorted and properly selected as compensable or non-compensable claims.

     v. In general, ensuring the accuracy of dates, and other data is essential to analyzing claims data files by health insurers and others who may need to determine the value of claims, the relevance of particular claims with respect to patient conditions, dates of care, or whether the claim is compensable.

   b. <u>Medical Diagnosis and Procedure Codes</u>:

     i. Diagnosis-Related Group (DRG) – DRGs are a statistical system of classifying any inpatient stay into groups for the purposes of payment. The DRG classification system divides possible diagnoses into more than 20 major body systems and subdivides them into almost 500 groups for the purpose of Medicare reimbursement. Factors used to determine the DRG payment amount include the diagnosis involved as well as the hospital resources necessary to treat the condition.[20][21]

---

[20] Gillian I. Russell, Terminology, in FUNDAMENTALS OF HEALTH LAW 1, 12 (American Health Lawyers Association 5th ed., 2011).

[21] Beginning in 2007, CMS overhauled the DRG system with the development of "severity-adjusted DRGs" and began to replace DRGs with "Medicare-severity DRGs" or "MS-DRGs" through a three-year phase-in period that blended payment under the old DRG system and the MS-DRG system. In a small number of MS-DRGs, classification is also based on the age, gender, and discharge status of the patient. The diagnosis and discharge information are reported by the hospital using codes from the ICD-9-CM or ICD-10-CM if the date of service is on or after October 1, 2015.

ii. International Classification of Diseases (ICD-9 and ICD-10) – Hospitals report diagnosis information using codes from the ICD-9-CM (the International Classification of Diseases, 9th Edition, Clinical Modification if the date of service is before October 1, 2015) or ICD-10 CM (if the date of service is on or after October 1, 2015).

iii. Inpatient medical procedures ICD-9 Volume 2 and Volume 3 and ICD-10 PCS – These codes are used to describe inpatient medical procedures, excluding the physician's bill.

iv. Current Procedural Terminology ("CPT") – CPT[22] codes are a standardized listing of descriptive terms and identifying codes for reporting outpatient medical services and procedures as well as both inpatient and outpatient physician services. The current version, CPT-4, is maintained by the American Medical Association and is an accepted standard by the National Committee on Vital Statistics or NCVHS.[23]

v. Ambulatory Patient Classification (APC) – Services performed in outpatient ambulatory surgery centers may be classified by APCs. CMS assigns individual services to APCs based on similar clinical characteristics

---

[22] CPT codes and descriptions are copyrights of the American Medical Association Current Procedural Terminology.

[23] National Committee on Vital and Health Statistics, Consolidated Health Informatics Initiative, *available at* http://www.ncvhs.hhs.gov/meeting-calendar/agenda-of-the-december-9-10-2003-ncvhs-subcommittee-on-standards-and-security-hearing/consolidated-health-informatics-initiative-final-recommendation-information-sheet-billingfinancial-for-the-december-9-2003-ncvhs-subcommittee-on-standards-and-security-hearing/.

and similar costs.[24]

    vi. Healthcare Common Procedure Coding System (HCPCS) – HCPCS is mainly used to indicate medical supplies, durable medical goods, ambulance services, and durable medical equipment, prosthetics, orthotics and supplies (DMEPOS).[25]

    vii. Medical Data Code Sets – The standard Code set for medical diagnosis and procedure codes in health care claims is a series of digits as specified in 45 C.F.R. § 162.1002.

    viii. The purpose of standard diagnosis code sets is to use a universal terminology in describing patients with certain conditions to determine compensable or non-compensable claims.

    3.    CMS primarily utilizes two systems of classification: (1) International Classification of Diseases ("ICD-9" and "ICD-10") medical diagnosis codes; and (2) Current Procedural Terminology ("CPT-4") procedure codes. *See* 45 C.F.R. § 162.1002.

---

[24] CMS, Hospital Outpatient Prospective Payment System, Partial Hospitalization services furnished by hospitals or Community Mental Health Centers, Ambulatory Payment System, https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNProducts/downloads/HospitalOutpaysysfctsht.pdf.

[25] American Academy of Professional Coders (AAPC), https://www.aapc.com/resources/medical-coding/hcpcs.aspx.

## APPENDIX 2

### Assignments

**AvMed, Inc.**

1.      On June 26, 2019, AvMed, Inc. entered into a Claims Purchase Agreement & Assignment with Series 17-03-615, a designated series of MSPRC, whereby it irrevocably assigned all rights to recover conditional payments made on behalf of its Enrollees (the "AvMed Assignment"). The AvMed Assignment is attached hereto as Exhibit M, and expressly provides, in pertinent part:

> Assignor irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its designated series, successors and assigns, any and all of Assignor's right, title, ownership and interest in and to (i) all Claims existing on the date hereof, whether based in contract, tort or statutory right, and all related recovery rights arising from and related to the claims data transferred to MSP Recovery (or its affiliates or service providers, including MSP Recovery, LLC), and (ii) any and all causes of action, claims and demands of any nature whatsoever relating to payments for health care services provided to Assignor's members and enrollees, and legal or equitable rights (including, but not limited to, subrogation) to pursue and/or recover monies related to the Claims that Assignor had, may have had, or has asserted against any party in connection with the Claims; and (iii) all causes of action, claims, rights and demands of any nature whatsoever, legal or equitable, against primary payers, Responsible Parties and/or third parties that may be liable to Assignor arising from or relating to the Claims, including claims under consumer protection statutes and laws (all of the items set forth in (i)-(iii), the "Assigned Claims") . . . . The assignment of the Assigned Claims set forth herein is irrevocable and absolute.

Exhibit M, at § 1.1.1.

2.      The "Assigned Claims" only exclude "those claims described on Schedule A" and are defined in the AvMed Assignment as "Excluded Claims." *Id.* Schedule A describes the Excluded Claims as the "Client's right to recover, under any theory, against its network healthcare providers and current and former members" as well as "Claims arising from and related to the GlaxoSmithKline's manufacturing facility in Cidra, Puerto Rico (the "GSK Cidra matter")[.]"

Exhibit M, at p. 14.

3.      The Assigned Claims include the right to pursue and recover payments made by AvMed on behalf of the AvMed Enrollees identified in Exhibits A and M (and include the right to recover payments made on behalf of all AvMed beneficiaries identified in the exemplar claims).

4.      To confirm that Enrollees were not one of the Excluded Claims, MSPRC reviewed all carve-out lists provided by AvMed with its claims data. The carve-out lists were provided by AvMed to identify the Excluded Claims (i.e., the specific claims of Enrollees excluded from being pursued by MSPRC). Enrollees' claims are not included on AvMed's carve-out lists. Therefore, Enrollees' claims are not Excluded Claims under the AvMed Assignment.

5.      The AvMed Assignment contemplated that the Parties would also enter into a separate "Stand-Alone Assignment Agreement" further evidencing the AvMed Assignment. Exhibit M, at § 6.1.

6.      The AvMed Assignment also provided for a due diligence period wherein the Parties would provide various deliverables to each other and, at the conclusion of which, the compensation amount would be delivered and various transaction documents – including but not limited to the AvMed Assignment and the Stand-Alone Assignment Agreement – would be released from escrow. Exhibit M, at § 3.2.

7.      Following execution of the AvMed Assignment, the Parties mutually agreed to extend the due diligence period several times. Upon completion of the due diligence period and satisfaction of the various deliverables and agreed upon conditions, the Parties finalized the transaction, including exchanging compensation and executing the Stand-Alone Assignment Agreement. *See* Exhibit M.

**<u>ConnectiCare, Inc.</u>**

8.      On March 20, 2018, ConnectiCare, Inc. irrevocably assigned all rights to recover conditional payments made on behalf of its Enrollees to Series 15-09-157, a designated series of MSPRC and to MSP Recovery, LLC, a Florida Limited Liability Company (the "ConnectiCare Assignment"). The ConnectiCare Assignment is attached hereto as Exhibit N, and expressly provides, in pertinent part:

> Assignor hereby irrevocably assigns, transfers, conveys, sets over and delivers to Assignee, and any of its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to all Assigned Medicare Recovery Claims, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party in connection with the Assigned Medicare Recovery Claims and all rights and claims against primary payers and/or, subject to the definition of Assigned Medicare Recovery Claims, third parties that may be liable to Assignor arising from or relating to the Assigned Medicare Recovery Claims, including claims under consumer protection statutes and laws, and all information relating thereto, as may be applicable…
>
> The transfer, grant, right, or assignment of any and all of Assignor's right, title, ownership, interest and entitlements in and to the Assigned Medicare Recovery Claims shall remain the confidential and exclusive property of Assignee or its assigns. This assignment is irrevocable and absolute.

Exhibit N-2.

9.      On April 4, 2018, MSP Recovery, LLC assigned the rights it had acquired in the ConnectiCare Assignment to Series 15-09-157, a designated series of MSPRC (the "Series Assignment 2"). The Series Assignment 2 from MSP Recovery, LLC to Series 15-09-157, which was ratified and approved by ConnectiCare, Inc., states:

> MSP Recovery, LLC ("Assignor"), for and in consideration of the sum of … and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, hereby irrevocably assigns, sells, transfers, conveys, sets over and delivers to **Series 15-09-157, a designated series of MSP Recovery Claims, Series LLC,** a Delaware series limited liability company ("Assignee"), and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to all assigned Subject Medicare Recovery Claims, … as such terms may be defined in the March 20, 2018 Assignment Agreement[.]

Exhibit N-3.